COLUMBIA FINANCE & TRUST CO. v. PURCELL et al.

(Circuit Court, E. D. Pennsylvania. June 6, 1906.)

No. 61.

1. BILLS AND NOTES—ANOMALOUS INDORSEMENT.

If a person puts his name in blank on the back of a note at the time it is made or before it is indorsed by the payee, for the purpose of giving the maker credit with the payee, he is an anomalous indorser, and in the federal courts is liable as a joint maker or a guarantor.

[Ed. Note.—For cases in point, see vol. 7, Cent. Dig. Bills and Notes, §§ 542–559.]

2. SAME—ALTERATION OF CONTRACT.

An anomalous indorser on a note could not be made liable on a contract written above his indorsement, reciting an agreement by such indorser to pay the note according to the terms of another agreement, which added several terms to the note.

On Motion by Defendant Yarnall for New Trial and for Judgment on Reserved Point Notwithstanding the Verdict.

Charles L. McKeehan and Joseph S. Clark, for plaintiff.

J. R. Morgan, for defendant Wm. D. Yarnall.

J. B. McPHERSON, District Judge. This suit was brought by the Columbia Finance & Trust Company, a corporation of the state of Kentucky, to the use of Attilla Cox and Oscar Fenley, against R. J. Purcell, Lizzie K. Goodwin, as the executrix of Howard T. Goodwin, and William D. Yarnall, upon an agreement purporting to be signed by Purcell, Howard Goodwin, and Yarnall in the month of August, 1902. A former trial (142 Fed. 984) resulted in a verdict directed by the court in favor of the plaintiff against the three defendants, but the verdict against Yarnall was set aside, and upon the present trial, which was against him alone, a verdict in favor of the plaintiff was again directed, but with the reservation of the question whether there was any evidence to go to the jury in support of the plaintiff's claim. No judgment has been entered upon the verdict against the other two. The important question now is, whether the plaintiff has any legally enforceable claim against Yarnall.

The agreement upon which the plaintiff's case is based was signed by Yarnall under the following circumstances: About the middle of August, 1902, Purcell brought to Yarnall's office in the city of Philadelphia, and presented to him for indorsement, a promissory note, of which the following is a copy:

"$17,000.00.                          Louisville, Ky., August 19, 1902.

"Four months after date we promise to pay to the Columbia Finance and Trust Company of the city of Louisville, or order, seventeen thousand dollars, in gold coin of the United States of America, of the present standard of weight and fineness, without defalcation, for value received, with interest in like gold coin at the rate of 6 per cent. per annum from date until paid, said interest payable with note. This note is negotiable and payable at the office of the Columbia Finance and Trust Company in Louisville, Ky.

"We have this day pledged with the Columbia Finance and Trust Company the following securities:

"Note, Central Clay Product Co. to order Perfect Combustion Co., dated June 10, 1902, at four months for $22,500.00.

"$40,000.00 of first mortgage bonds of the Central Clay Product Co., dated June 16th, 1902, and due June 16th, 1912.

"200 shares of preferred and 240 shares of common stock of the Central Clay Product Company.

"This pledge is made to secure all sums of money for which the undersigned may be now or may hereafter become liable to the said trust company, either as principal, surety, guarantor, or indorser. The said trust company may at any time demand further collateral satisfactory to it, to be deposited for the securing of any debt owing to it by the undersigned, and, if so demanded, the undersigned promises to comply with said demands. In default of such compliance, any or all debts, without regard to the time of maturity specified in the notes evidencing the same, shall become due and payable at the option of said trust company or the holder. In default of payment of this or any other obligation of the undersigned to said trust company, or of any interest which may be due and payable according to the terms of any obligation, whether such maturity occurs by expiration of time, or by reason of declaration of maturity under the foregoing provision, or nonpayment by the undersigned of any overdraft of his account with said trust company, the said trust company may sell and deliver the whole, or any part of all collateral which may have been delivered to it, or left in its possession by the undersigned as collateral, or for safe-keeping, or otherwise, at any board of trade, or at public or private sale, at the option of said trust company, without either advertisement or notice to the undersigned, which are hereby expressly waived. If said collaterals are sold at public sale, the said trust company may purchase the whole or any part thereof, and have clear title thereto. In case of such public or private sale, the said trust company may first deduct from the amount realized all expenses of sale of the collaterals or property, and may then apply the residue to any one or more of the said liabilities, whether due according to their terms or not, as either of its officers shall deem proper; returning the surplus, if any, to any of the undersigned, all of whom shall remain liable to the company for any deficit remaining after such sale.

"It is agreed that any collateral held by the trust company may be, by mutual consent of the trust company, and any of the undersigned, exchanged for other collateral, which new collateral shall be held by the trust company subject to the terms hereinabove set forth.

"The said trust company, in dealing with said collateral, is to be under no liability or obligation whatever to any person bound as surety or indorser with the principal hereto, and may at its option, without any responsibility to any person so bound, deliver to the principal hereof any or all of said collaterals, with or without substitution of other collateral.

"The Perfect Combustion Co. of America,

"E. C. Brice, Prest.

"Benj. W. Wilson, Treas."

At the time the note was presented to Yarnall, it bore upon its back the signatures of Purcell and Goodwin in that order, but there was no other writing upon it; and it is not only a conceded fact in the case, but the jury has specifically found, that Yarnall did not agree that the contract hereinafter referred to should be written above his signature. The note was indorsed by Yarnall below Goodwin's name, and was then taken to Louisville by Purcell, where it was delivered to the Columbia Finance & Trust Company after the following further transaction had taken place: In pursuance of some previous negotiations between several persons (whether Yarnall took part or not does not appear, and the details are not very satisfactorily shown by the evidence), an agreement was completed in Louisville upon August

19th between Purcell and other persons, of which the following is a copy:

"Louisville, Ky., July 5th, 1902.

"R. J. Purcell, Esq., Louisville, Ky.—Dear Sir: We will deposit with the Columbia Finance and Trust Company of Louisville, Ky., to the joint credit of the Central Clay Product Company and the Perfect Combustion Company the sum of seventeen thousand ($17,000) dollars, for the repayment of which to us you are to deliver to us the note of the Perfect Combustion Company of America, payable four months after date, with the privilege of renewal, and indorsed by yourself and one other responsible person; and to further secure the repayment of said seventeen thousand ($17,000) dollars so advanced by us, there shall be deposited with the Columbia Finance and Trust Company a note of the Central Clay Product Company of date June 10th, 1902, to order of Perfect Combustion Company, due at four months for $22,500; also forty thousand ($40,000) dollars of first mortgage bonds of the Central Clay Product Company, twenty-six thousand ($26,000) dollars of preferred stock and thirty-nine thousand ($39,000) dollars of common stock of said Central Clay Product Company; the seventeen thousand ($17,000) dollars so advanced by us to be repaid to us, with six per cent. interest from the date of its deposit with the Columbia Finance and Trust Company, four months after said date, with the privilege on the part of the makers and indorsers of said note to extend the time of payment an additional four months; it being understood and agreed that said seventeen thousand ($17,000) dollars so deposited with the trust company shall be used for improvements to the property of the Central Clay Product Company at Cloverport, Ky., and to be paid out by the trust company only upon the joint check of the Central Clay Product Company by its president, accompanied by the certificates of the engineer in charge of the improvements of said property that the work or material for which the money is wanted has been done or furnished; it being further understood that for our compensation said seventeen thousand ($17,000) dollars as above, we are to be paid ten thousand ($10,000) dollars par value of the preferred stock and ten thousand ($10,000) dollars par value of the common stock of the Central Clay Product Company out of its total issue of one hundred and thirty thousand ($130,000) dollars of stock and cash to the amount of four per cent. of the amount of money so furnished by us. It is a condition precedent to this agreement that Bodley, Baskin & Morancy, attorneys, shall file with the trustee under the mortgage a certificate or abstract to the effect that the title to the mortgaged property is good and the bonds were legally issued.

"This proposition is based upon a proposal this day made to us by Mr. George C. Patton relative to the proposition herein set out. This is in lieu of our proposition of July 3rd, 1902.

"Signed in triplicate.

"[Signed]                                        Oscar Fenley.
"[Signed]                                        Attilla Cox,
                                    "By L. W. Butts, Atty. in Fact.

"The above proposition accepted this August 19th, 1902.
                        "R. J. Purcell.
                        "The Perfect Combustion Co. of America,
                            "By R. J. Purcell, Vice President.

"It is understood and agreed by all parties hereto that out of the $39,000 of common stock and $26,000 of preferred stock there shall be issued $5,000 of common and $5,000 preferred stock to Attilla Cox, and $5,000 of common and $5,000 preferred stock to be issued to Oscar Fenley by Geo C. Patton, all of which stock was issued and delivered at the time of the execution of these papers and the deposit of the money, August 19, 1902.
                        "R. J. Purcell,
                        "The Perfect Combustion Co. of America,
                            "By R. J. Purcell, Vice President."

Thereupon the agreement in suit was written upon the back of the note already referred to, above the signatures of Purcell, Goodwin, and Yarnall, as follows:

"We hereby agree in our indorsement of this note to promptly pay same, according to the terms of agreement with Messrs. Cox and Fenley, a copy of which is attached."

The Columbia Finance Company thereupon advanced $17,000, less 4 per cent., upon the faith of the note in the condition just described, and this money was afterwards applied to the purposes and in the manner specified in the agreement that is referred to by the writing on the back of the note. The maker, the Perfect Combustion Company of America, having failed to pay the note, a joint suit was brought against the three defendants in the present action upon the writing to which their names appear to be signed upon the back of the primary obligation.

This obligation, having been drawn to the order of the Columbia Finance & Trust Company, and having never been indorsed by the payee, it is evident that when Purcell, Goodwin, and Yarnall put their names upon the back of the instrument they became what is known in the law of commercial paper as "irregular indorsers." The liability assumed by such an indorser differs in different jurisdictions, but as Yarnall's liability is asserted by the plaintiff to be fixed by the law of the federal tribunals, I shall consider it from that point of view. The suit is brought against the defendants jointly, on the theory that they are joint guarantors, their status, so it is said, having been thus determined by decisions of the Supreme Court. That an irregular or anomalous indorser will be held by the courts of the United States to the liability either of a joint maker or of a guarantor is undoubtedly true. The leading case upon the subject is Good v. Martin, 95 U. S. 90, 24 L. Ed. 341, in which Mr. Justice Clifford, speaking for the court, lays down three rules for determining the liability of a man who puts his name upon the back of a promissory note before it has been indorsed by the payee. His language is as follows:

"(1) If he put his name in blank on the back of the note at the time it was made and before it was indorsed by the payee, to give the maker credit with the payee, or if he participated in the consideration of the note, he must be considered as a joint maker of the note. Schneider v. Schiffman, 20 Mo. 571; Irish v. Cutter, 31 Me. 536.

"(2) Reasonable doubt of the correctness of that rule cannot be entertained; but if his indorsement was subsequent to the making of the note and to the delivery of the same to take effect, and he put his name there at the request of the maker, pursuant to a contract of the maker with the payee for further indulgence or forbearance, he can only be held as guarantor, which can only be done where there is legal proof of consideration for the promise, unless it be shown that he was connected with the inception of the note.

"(3) But if the note was intended for discount, and he put his name on the back of the note with the understanding of all the parties that his indorsement would be inoperative until the instrument was indorsed by the payee, he would then be liable only as a second indorser, in the commercial sense, and as such would clearly be entitled to the privileges which belong to such an indorser."

With the second and third of these rules we have nothing to do in the present case, because there is no evidence to call for their application, but the first rule appears to be applicable, and requires the court to consider Yarnall as a joint maker with the Perfect Combustion Company, and perhaps with Purcell and Goodwin also. If this be so, there is at least one fatal objection to the plaintiff's claim. Putting aside the question whether the proper defendants have all been sued upon the joint contract, the substantial and insuperable difficulty remains that the contract upon which Yarnall is sued is not the contract by which he became bound. If, by operation of law, he became a joint maker when he indorsed the note before delivery, no one without his consent could substitute the contract of guaranty on which it is now proposed to hold him, and writing a contract of guaranty above his name was either a void act, or was an attempted alteration of his real contract, that relieved him from liability.

And, in my opinion, the position of the plaintiff is not improved by holding that Purcell, Goodwin, and Yarnall were joint guarantors, and that any holder of the note might write a contract of guaranty above their names. I agree that whatever contract is implied by an indorsement may be lawfully written out in visible words, but I do not agree that the contract in suit goes no further than the contract implied by the law. On the contrary, it undertakes to bind the indorsers according to the terms of the writing that bears date on July 5th, and this writing adds several terms to the note. It need not be argued that Yarnall could not be bound by a contract of guaranty to which he did not expressly agree, or to which the law does not imply his assent.

Judgment may be entered in his favor upon the reserved point.